[No. 1450, May 5, 1912.]

THE JAQUEZ DITCH COMPANY, et al., Appellants, v. LEONOR GARCIA, et al., Appellees.

## SYLLABUS (BY THE COURT).

1. Where the question involved was whether a certain arroyo was or was not a natural water course, and the court below found "that the arroyo was not a permanent or natural stream or water course in which water runs during the entire year, being a dry arroyo carrying only such

waters as may be designated as surface or flood waters," and dismissed the cause on this ground: Held error.

2.   Where surface water in a hilly region or high bluffs seeks an outlet through a gorge or ravine during the rainy season and by its flow assumes a definite and natural channel, and such has always been the case so far as the memory of man runs, such accustomed channel through which the water flows possesses the attributes of a natural water course.   The flow of the water need not be continuous, and the size of the stream is immaterial.

Appeal from District Court San Juan County.

HANNA & WILSON, for Appellants.

Discussion as to whether the water in question in this cause was a natural water course or surface water.   31 Cyc. 203; C. R. I. & P. R. R. Co. v. Groves, Okla. 761; Wharton v. Stevens, 15 L. R. A. 633; Ribordy v. Murry, 177 Ill. 134; Mo. Pac. R. Co. v. Wren, 62 Pac. 7; Earl v. De Hart, 72 Am. Dec. 395; Macomber v. Godfrey, 108 Mass. 219; Gould on Waters, sec. 264; West v. Taylor, 13 Pac. 665; Gibbs v. Williams, 25 Kas. 241; Walker v. N. M. & S. P. R. R. Co. 156 U. S. 593; Bowlsby v. Speer, 31 N. J. L. 353.

### STATEMENT OF THE CASE.

This case comes to this court from the First Judicial District Court of the County of San Juan.   It was brought by the plaintiffs below, appellants in this court, who compose the Jaquez Ditch Company.   The suit was brought by the company and the individual members thereof, to enjoin the defendant from obstructing the course of the arroyo, alleging it to be a natural water course, which arroyo the defendant is alleged to have obstructed a few yards below a point where it crosses the canal or ditch of the plaintiffs.   It is alleged that this obstruction causes the arroyo to fill up and damage the plaintiff's ditch and the adjoining property of the individual plaintiffs.   The

prayer of the complaint was for a mandatory injunction, restraining the defendant from continuing his obstruction of the natural water course, and for damages. The defendant answered denying the arroyo was a natural water course and that in its natural channel it crossed the defendant's land, or that in its natural course it touched the land of the defendant. The facts upon which the case rests, as far as they are material to its decision, are as follows: The plaintiff company owns an acequia or irrigating canal taking water from the San Juan River on the north side thereof, watering land belonging to various parties. The defendant, Leonor Garcia, owns forty acres of land, the north boundary of which is approximately one hundred feet south of the ditch at a point where the controversy arises. One of the plaintiffs, David Trujillo, owns forty acres just north of the Garcia forty and through which the ditch runs. The Garcia forty and a large part of the Trujillo forty are in what is known as the bottom land, and the lines of the hills bordering this valley land crosses the Trujillo forty, so that part of this forty lies in the valley and part in the hills. The arroyo comes down through an opening in the hills upon this Trujillo forty, and, as claimed by the plaintiffs, crosses the line of the Jaquez ditch and the Garcia forty and empties into the San Juan River. It is admitted by the pleadings that the defendant by means of a tight fence and trees set close together obstructed this arroyo on his north line, but he testified and claims that the obstruction which he made was solely for the purpose of protecting himself against the water. The appellees filed no brief in this court, and their position is not made clear, but it is evident from the record that one of the principal points in dispute was the true course of the arroyo. On this point the evidence was conflicting, but the court below did not decide this but held that the arroyo in question "is not a permanent or natural stream or water course in which water runs during the entire year, being a dry arroyo carrying only such waters as may be designated as surface or flood waters," and dismissed the case.

### OPINION OF THE COURT.

RAYNOLDS, D. J.—Appellants assign error as follows: 1st: That the trial court erred in finding that the Garcia Arroyo carried only flood waters or surface waters, and that the law applicable to surface waters governs this case: 2nd; That the trial court erred in finding that under the issues as raised by the pleadings the question of surface waters was to be considered at all: 3rd; That the trial court erred in not holding that under the pleadings the defendants were estopped from asserting or claiming the waters of the Garcia Arroyo were surface waters: 4th; That the trial court erred in not granting the injunction asked for and compelling the defendant Garcia to remove the dam he had constructed across the Garcia Arroyo: 5th; That the trial court erred in not finding the issues in this case for the plaintiffs: 6th; That the trial court erred in its finding of law as to what constitutes surface or flood waters; and 7th; that the trial court erred in finding that a stream or water course carries only flood or surface waters unless it runs during the entire year.

In our opinion the first, sixth and seventh assignments are alone necessary for a determination of this case, these three relating to the same subject, namely, whether such a stream or arroyo, the obstruction of which is alleged here, is or is not a natural water course. The legal definition of such a water course, as adopted by the courts of last resort in various jurisdictions, is shown by the following quotations:

"When surface water, having no definite source, supplied from fall rains and melting snows from a hilly region or high bluffs, and, owing to the natural formation of the surface of the ground, is forced to seek an outlet through a gorge or ravine, and by its flow assumes a definite and natural channel, and escapes through such channel regularly during the spring months of every year and in seasons of heavy rains, and such has always been the case, as far as the memory of man runs, such accustomed channel through which the waters flow possesses the attributes of a natural water course. * * * The flow of the

water need not be continuous, and the size of the stream is immaterial." Mo. Pac. R. Co. v. Wren, (Kan.) 62 Pac. 7.

"Where surface water from rains and snows in a hilly country, by the natural formation of the ground, seeks its outlet through a gorge or ravine, and by its flow assumes a definite channel, such a one, to a casual glance of the eye, bears an unmistakable sign of the frequent action of running water, and through which at regular seasons the water flows, and such has been immemorially the case, such a stream is a natural water course." Gibbs v. Williams, 25 Kan. 241.

"The elements of a water course are definite banks, with an obvious bed or channel showing the presence of running water at times, anyway." Erwin v. Erie R. Co., N. Y., Sup. 315, 317.

"A stream does not cease to be a water course, and become mere surface water, because at a certain point it spreads over a level meadow several rods in width, and flows for a distance without defined banks before flowing again in a definite channel." Harrington v. Demaris, (Or.) 77 Pac. 603, 606, (Citing Gould Waters, 3rd ed., sec. 264).

"A water course consists of bed, banks and water. Yet the water need not flow continually. There are many water courses which are sometimes dry. To maintain the right to a water course it must be made to appear that the water usually flows in a certain direction, and by a regular channel, with banks and sides." Chamberlain v. Hemingway, 27 Atl., 239, 240, 63 Conn. 1; 22 L. R. A., 45; 38 Am. St. Rep. 330.

"A water course is defined to be 'a running stream of water; a natural stream, including rivers, creeks, runs and rivulets.' Further defining the term the court said: 'There must be a stream, usually flowing in a particular direction, though it need not flow continually. It may sometimes be dry. It must flow in a definite channel, having a bed or banks, and usually discharges itself into some other stream or body of water.'" Sanguinetti v. Pock, 136 Cal. 466, 471; 89 Am. St. Rep. 169; 69 Pac.

98.   Quoted with approval in Weil on Water Rights in. the Western States, 2nd ed., p. 165.

In McClure v. Red Wing, 28 Minn., 191, 9 N. W., 767,. it was held: "In a broken and bluffy region of country like that part of southeastern Minnesota adjacent to the Mississippi River and its tributaries, intersected by long, deep ravines, surrounded by high, steep hills or bluffs, down which large quantities of water from rain or melt-- ing snow rush with the rapidity of a torrent, often attain- ing the volume of a small river, it would be manifestly in- appropriate and unjust to apply the rules of common law applicable to ordinary surface water.   In many respects such streams partake more of the nature of natural streams: than of ordinary surface water, and must, at least to a certain extent, be governed by the same rules.   But no- one has a right to obstruct or divert such waters so as to cast them upon the property of others to their injury." Cited by Farnham on Waters and Water Rights, vol. 2, par.. 455, A. p., 1556.   "It is immaterial that it (the stream) may be intermittent in its flow, or that at certain sea- sons of the year there may be little or even no flow of water.   In a country such as Ontario, where there are no mountain ,streams supplied by melting snow, and. where there are long periods with but little rainfall, streams of considerable magnitude become nearly dry in summer; and yet, no one would hesitate to call them water courses."" Arthur v. Grand Trunk R. Co., 22 Ont. App., Rep. 89, Affirming Beer v. Straud, 10 Ont. Rep. 10, See Also· Farnham, Waters and Water Rights, vol. 2, par. 459, p. 1563.

The only case that seems to be in conflict with these- definitions is the case of Walker v. Atchison, Topeka & Santa Fe R. Co., 156 U. S. p., 593; but a careful ex- amination of this case shows that the obstruction or em- bankment complained of was four miles from the mouths· of the arroyo, and that the water after leaving the arroyo spread out and became surface or flood water.   It is ob-- vious that this case rests on a different state of facts, and it appears from the evidence that the arroyo in ques-- tion came out of the hills in a well defined channel a few·

rods from where the obstruction was erected. We think the court below erred in holding that such a stream or arroyo was not a permanent or natural water course because water did not run in it during the entire year and because at times it carried flood or surface waters.

As to the true course of the arroyo, whether it did or did not run through the land of the defendant, the evidence was conflicting. The trial court did not decide the question, and that matter is not before us for review. The cause is reversed on the ground that the trial court erred in its definition of a natural water course, and remanded for further proceedings in conformity with this opinion.

HANNA, J., having been of counsel in the court below, did not participate in this opinion, and the cause was heard by Roberts, C. J., Parker, J., and Raynolds, District Judge.